UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA G. VILLALOBOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 545 |
| v. ) | |
| ) | Judge Rubén Castillo |
| MEYER NJUS TANICK, P.A., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Maria G. Villalobos ("Plaintiff") brought this action against Meyer Njus Tanick, P.A. ("Defendant"), alleging claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (R. 23, Am. Compl.) Before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). (R. 24, Def.'s Mot.) For the following reasons, the motion is denied.

## BACKGROUND

Plaintiff is an Illinois resident and consumer. (R. 23, Am. Compl. ¶ 4.[1]) Defendant is a debt collection law firm who regularly does work on behalf of Synchrony Bank ("Synchrony"). (*Id.* ¶ 5.) Synchrony is in the business of extending consumer finance to customers through the issuance of various store credit cards, and is one of the largest issuers of credit in the United States. (*Id.* ¶¶ 10, 18.)

Plaintiff incurred debt from an Old Navy store credit account issued through Synchrony, and Defendant was engaged by Synchrony to collect payment. (*Id.* ¶¶ 10-13.) On or around

---

[1] Plaintiff's amended complaint contains errors in its paragraph numbering. For clarity of reference, the Court refers to the complaint paragraphs in the order in which they appear.

1

December 26, 2018, Defendant sent a debt collection letter to Plaintiff. (*Id.* ¶ 14.) The letter identified Meyer Njus Tanick as "Attorneys at Law" and a "debt collector," and identified Elia K. Civelli ("Civelli") as one of the attorneys of the firm. (*Id.* ¶¶ 15-16.) Above the signature line for Civelli was an indiscernible scribble. (*Id.* ¶ 17.) Below the signature line was a bar code which Plaintiff says is indicative of a tracking mechanism necessary to monitor the large number of letters produced by the Defendant. (*Id.* ¶ 23.) Plaintiff alleges that Defendant sends thousands of such debt collection letters to consumers every day, and that the letter it sent to Plaintiff was sent without any meaningful attorney review of her underlying account in order to assess the veracity of the letter's representations. (*Id.* ¶¶ 19-24.) She supports her assertion with reference to another case against Defendant in this District involving a nearly identical collection letter, as well as administrative agency complaints against Defendant. (*Id.* ¶¶ 19, 20, 25.) Plaintiff reasons that given the volume of Defendant's communications, it would be virtually impossible for a single attorney to review the file prior to sending the communication. (*Id.* ¶¶ 19, 20, 24, 25.)

Instead, Plaintiff alleges, Defendant included what looks like the signature of an attorney on the letter it sent to her without the attorney actually having completed a meaningful review of the underlying debt. (*Id.* ¶¶ 21-22.) It did so, she complains, in order to exert undue pressure on Plaintiff and other consumers generally to compel them to make a payment out of fear that Defendant will file a lawsuit against them. (*Id.* ¶ 27.) Indeed, Plaintiff complains, receiving the letter caused her to be unfairly confused about her debt and subjected her to the undue pressure that an attorney had reviewed her account and determined that it was appropriate for legal action. (*Id.* ¶ 28.) Accordingly, Plaintiff alleges that Defendant violated the FDCPA by falsely representing that its communication was from and reviewed by an attorney, and by using an unfair or unconscionable means to collect a debt. (*Id.*)

**PROCEDURAL HISTORY**

Plaintiff filed her complaint against Defendant on January 28, 2019. (R. 1, Compl.) On April 30, 2019, she filed an amended complaint alleging violations of 15 U.S.C. §§ 1692e(3), 1692e(10), and 1692f. (R. 23, Am. Compl. ¶¶ 35-39.) On May 2, 2019, Defendant moved to dismiss the amended complaint. (R. 24, Def.'s Mot.) Plaintiff filed her opposition on June 5, 2019. (R. 31, Pl.'s Resp.) Defendant replied on June 17, 2019. (R. 32, Def.'s Reply.) The motion is now ripe for resolution.

**LEGAL STANDARD**

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (quotation and alteration omitted). To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In construing the complaint, the Court accepts all well-pleaded facts as true and draw all reasonable interferences in the plaintiff's favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

A motion to dismiss pursuant to Rule 12(b)(1) challenges this Court's subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "[I]f a plaintiff cannot establish standing to sue . . . dismissal under [Rule] 12(b)(1) is the appropriate disposition." *Am. Fed'n of Gov't Emps., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). Defendant's Rule 12(b)(1) motion is properly

3

understood as a facial challenge because it contends that Plaintiff's complaint lacks sufficient factual allegations to establish standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The Court reviews a facial challenge to Plaintiff's standing under the same standard set forth above for a motion to dismiss for failure to state a claim. *Id.* at 173-74.

## ANALYSIS

Defendant moves to dismiss the amended complaint for lack of jurisdiction and failure to state a claim. (R. 24, Def.'s Mot.) First, Defendant argues that Plaintiff does not allege an injury in fact, or that any perceived injury was caused by Defendant's actions. (R. 25, Def.'s Mem. at 5-8.) Next, Defendant argues that Plaintiff fails to adequately allege that her debt was a consumer one as defined by the FDCPA. (*Id.* at 8-11.) Lastly, Defendant argues that Plaintiff fails to sufficiently allege facts suggesting that it used a false representation to collect a debt, or that it falsely represented that its communication was from an attorney. (*Id.* at 11-15.) Plaintiff opposes the motion, arguing that she both adequately pleads the intangible injury that the FDCPA was designed to prevent, and that she also pleads an actual injury—increased anxiety and confusion caused by her receipt of Defendant's letter. (R. 31, Pl.'s Resp. at 6-10.) According to Plaintiff, she adequately alleges a consumer debt arising out of her personal use of a consumer store credit card, and that Defendant used false and deceptive means to collect the debt since it falsely represented that its letter was from an attorney following meaningful review. (*Id.* at 10-15.)

4

## I. Standing

Defendant first argues that Plaintiff lacks standing to bring the claims she asserts because she fails to allege that she suffered an injury or that there is any connection between the procedural violation she alleges and any perceived injury of which she complains. (R. 25, Def.'s Mem. at 5-8 (citing *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016)); R. 32, Def.'s Reply at 2-8.) As Defendant sees it, because Plaintiff does not allege that she took any specific action in response to its debt collection letter or that any portion of its letter was false, Plaintiff fails to allege how any confusion or anxiety she complains of was anything more than that which she would have incurred upon receipt of any valid debt collection letter. (R. 25, Def.'s Mem. at 6-7; Def.'s Reply at 7-8). As a result, Defendant reasons, Plaintiff alleges only a bare procedural violation and not a concrete and particularized injury. (R. 25, Def.'s Mem. at 6-7.) Plaintiff opposes the motion, arguing at the threshold that the statutory violation she alleges gives rise to intangible harm sufficient to establish standing. (R. 31, Pl.'s Resp. 6-10.) Even if the violation alone were not enough, Plaintiff adds, her allegation that she suffered amplified anxiety and confusion traced back to the purported attorney letter shows an injury that supports her standing. (*Id.* at 11-15.)

The jurisdiction of this Court is limited to "cases" and "controversies" as defined in Article III, Section 2 of the Constitution. *Spokeo,* 136 S. Ct. at 1547. "There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct." *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 587 (7th Cir. 2016). To establish Article III standing, "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife,* 504 U.S.

5

555, 560-61 (1992)). The plaintiff has the burden of establishing these elements "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to state a claim. *Id.*

*Spokeo* instructs that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct at 1548 (quoting with alteration *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 1549. "Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* The violation of a statutory right can be sufficient in some circumstances, such as where a "risk of real harm" exists. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018). A "bare procedural violation" that is "divorced from any real harm" will not satisfy the injury-in-fact element of standing, whereas the requirement will be met by an alleged "statutory violation [that presents] an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek v. Great Lakes Higher Educ. Corp.*, 865 F.3d 884, 887 (7th Cir. 2017) (quoting *Spokeo*, 136 S. Ct at 1549-50, and *Myers*, 843 F.3d at 727).

Here, Plaintiff alleges that she suffered an injury-in-fact that is concrete and particularized, and a favorable judicial decision could redress her injury through an award of statutory damages under the FDCPA. *See* 15 U.S.C. § 1692k(a)(2)(A). Specifically, she complains that Defendant falsely represented that an attorney had reviewed her account and determined that it was appropriate for legal action. (*See* R. 23, Am. Compl. ¶¶ 17, 21, 27.) In

6

addition, Plaintiff alleges that she suffered increased confusion and pressure as a result of Defendant's false representation. (*Id.* ¶ 28.) This type of intangible harm is the precise injury that Congress sought to prevent in passing the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 559 U.S. 573, 577 (2010) (noting FDCPA is designed to prevent "abusive debt collection practices" including "false representations as to a debt's character, amount, or legal status[.]"); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 880 (N.D. Ill. 2018) (agreeing with collected authorities that "plaintiffs claiming intangible injuries from alleged predatory debt collection practices do in fact have Article III standing to sue for statutory damages under the FDCPA"); *Haddad v. Midland Funding*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017) (Although injury may be hard to quantify, "[B]eing lied to in violation of an anti-trickery statute like the FDCPA is a concrete harm nevertheless.").

Defendant's assertion that Plaintiff must allege falsity in the substance of the letter (*i.e.*, that Defendant misrepresented the amount of debt or Plaintiff's FDCPA rights) in order to allege an injury traceable to its action conflicts with the statute and misses the gist of Plaintiff's claims. (*See* R. 23, Am. Compl.) Just as the FDCPA prohibits a false representation as to the character or amount of the debt, 15 U.S.C. § 1692e(2), so too does it prohibit "[t]he false representation or implication that any . . . communication is from an attorney." 15 U.S.C. § 1692e(3). A communication purporting to be from an attorney "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up.") If, however, the communication "is not the product of the attorney's professional judgment—if [s]he has not independently determined that the debt is ripe for legal action by reviewing the debtor's file, for

7

example . . . then the [communication] is misleading" and violates § 1692e. *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

Nor does the Defendant's reference to *Sheriff v. Gillie*, 136 S. Ct. 1594, 1603 (2016), compel a different result. In *Sheriff*, the Supreme Court concluded that summary judgment had been properly granted to a debt collection law firm on Plaintiff's Section 1692e claim based on the firm's issuance of a collection letter on the Ohio Attorney General's letterhead stating that it was a "special" or "outside counsel" because the representations were found to be truthful. *Id.* The Court did not evaluate a meaningful review claim, nor did it conclude any such cause of action fails where the substance of the communication was unchallenged. *See id.* Instead, it held only that no deception had been established on the record. *See id.* Here, on the other hand, the truthfulness of Defendant's representation is not an issue that can be determined at this juncture. *See Roberts*, 817 F.3d at 564.

At this point, it is sufficient that Plaintiff alleges that Defendant's misrepresentation gave rise to real harm in the form of amplified anxiety and confusion. *See Lujan*, 504 U.S. at 561. As this Court's colleague observed in rejecting a debt collector's challenge to the plaintiff's standing in a case involving similar FDCPA claims, "the purported procedural violations [the plaintiff complains of] are only the premise, not the sum total, of the harm to [the plaintiff]." *Boerner v. LVNV Funding, LLC*, 326 F. Supp. 3d 665, 675 (E.D. Wis. 2018) (finding plaintiff had standing to bring meaningful involvement FDCPA claim based on among other things assertion of increased anxiety and fear from false representation that attorney had made considered judgment that suit against him had merit).

Finally, Plaintiff's allegations also suggest that her injury is fairly traceable to Defendant. She complains that the letter was sent under an attorney's signature to exert undue pressure on

Plaintiff to compel payment out of fear of a lawsuit, and that as a result of receiving Defendant's letter, she suffered confusion and undue pressure. (R. 23, Am. Compl. ¶¶ 27, 28.) While Defendant may be correct that Plaintiff could have been more specific in defining how the lack of meaningful attorney involvement caused her injury, Plaintiff has said enough to put Defendant on notice of her straightforward FDCPA claims. *See Swanson*, 614 F.3d at 414; *Boerner*, 326 F. Supp. 3d at 675. Because Plaintiff sufficiently alleges her standing, Defendant's Rule 12(b)(1) motion is denied.

## II.  Rule 12(b)(6) Motion

Defendant argues that Plaintiff fails to state a claim for three reasons. (R. 25, Def.'s Mem. at 8-15.) First, Defendant asserts that Plaintiff fails to allege sufficient facts to demonstrate that her debt was a consumer one as defined by the FDCPA. (*Id.* at 8-11.) Second, Defendant asserts that Plaintiff fails to allege sufficient facts that Defendant falsely represented its letter was from an attorney. (*Id.* at 11-13.) Finally, Defendant argues that without a challenge to the substance of Defendant's letter, Plaintiff cannot state a Section 1692e claim. (*Id.* at 13-15.) Plaintiff argues in opposition that her allegations sufficiently show that her debt is a consumer one, and that Defendant fraudulently represented that its communication was issued following meaningful attorney review. (R. 31, Pl.'s Resp. at 11-14.) Finally, she asserts that Defendant misapplies binding authorities in a misguided attempt to argue she cannot state a claim. (*Id.*)

### A.  Consumer Debt

According to Defendant, Plaintiff's claim fails because she simply "regurgitates" in her complaint the statutory language defining consumer debt, and fails to allege any facts demonstrating that the debt she incurred was for primarily personal, family, or household purposes. (R. 25, Def.'s Mem. at 8-11; R. 32, Def.'s Reply at 8-9.) Defendant supports its

9

position by emphasizing Paragraph 11 of Plaintiff's amended complaint, in which she alleges that "all purchases Plaintiff made with the Old Navy store credit card issued through Synchrony Bank were made in connection with Plaintiff's personal use." (*Id.* at 11.) Plaintiff concedes in opposition that the quoted language mirrors the statute, but urges that the other allegations of her amended complaint adequately describe the debt as a consumer one to which the FDCPA applies. (R. 31, Pl.'s Resp. at 10-11.) This Court agrees.

As Plaintiff observes, Defendant is incorrect to assert that Plaintiff only pleads one factual allegation on this point. (*Id.*) Instead, Plaintiff also alleges that her debt stems from an Old Navy store credit card issued through Synchrony, and that Synchrony is in the business of providing consumer financing to customers through such store credit cards. (R. 23, Am. Compl. ¶ 10.) It is with this context that she also alleges that her purchases at Old Navy were for her personal use. (*Id.* ¶ 11). Accordingly, Plaintiff's description of her debt is not the mere legal conclusion Defendant suggests, and it is sufficient to support her claims. *See Swanson*, 614 F.3d at 404-05 (noting that while a complex case requires more detailed allegations to give the defendant notice of the claim, the pleading burden is met in a straightforward case with substantially less); *see also Blaha v. First Nat'l Collection Bureau, Inc.*, No. 16-cv-2791, 2016 U.S. Dist. LEXIS 157575, at *13-14 (D. N.J. Nov. 10, 2016) (pleading standard met by allegation that plaintiff's debt arose out of consumer credit account opened in order to pay for personal and household items and not for business expenses).

### B.  Allegations of Fact

Defendant argues that Plaintiff fails to state a claim because she fails to plead sufficient factual allegations that it did not engage in a meaningful attorney review of her debt before sending its collection letter. (R. 25, Def.'s Mem. at 11-13.) According to Defendant, Plaintiff's

allegations are too speculative and conclusory to support her claim, and the fact that Defendant issues form letters only shows its compliance with the FDCPA's disclosure requirements and not a lack of meaningful attorney review. (*Id.*) Plaintiff argues in opposition that she has alleged sufficient facts to establish her claim, especially given their straightforward nature. (R. 31, Pl.'s Resp. at 11-14.)

It is well-settled that a plaintiff adequately states a claim by providing "enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. Plaintiff does so here. She alleges that she received a letter from Defendant that was on attorney letterhead and purportedly signed by an attorney despite that no meaningful attorney review of Plaintiff's account had occurred. (R. 23, Am. Compl. ¶¶ 14-16.) She alleges that Synchrony is consumer lender, that it is one of the largest issuers of credit in the United States, and that "it stands to reason that Synchrony Bank has a proportionally large number of accounts that are referred to collection activities by third-party debt collectors such as Defendant." (*Id.* ¶¶ 9, 18.) She also alleges that Defendant works with Synchrony "on a regular basis," and that "Defendant sends thousands of identical collection letters to consumers on a daily basis." (*Id.* ¶¶ 18, 19.) She supports her claim with reference to another case in this District involving an identical letter, as well as administrative agency complaints lodged against Defendant that are similar to the one Plaintiff received. (*Id.* ¶¶ 19, 20, 25.) Finally, she alleges that the letter she received included a tracking number, which is indicative of an automated letter tracking process. (*Id.* ¶ 23.)

These allegations adequately support the inference that Defendant did not provide meaningful review of Plaintiff's account prior to sending the letter, and that Defendant used an unfair or unconscionable means to collect a debt. Plaintiff has signaled to Defendant the nature

11

of the litigation and she has given it fair notice of her claims. Whether Defendant is correct that the similarity of its debt collection letters is simply a product of its compliance with the FDCPA, or the Plaintiff is correct that the volume and formulaic nature of its communications belie a lack of meaningful attorney review is a matter for another day. *See Iqbal*, 556 U.S. at 678 ("[T]he plausibility standard is not akin to a probability requirement[.]" (internal quotation omitted)). This Court agrees with its colleague's decision in *Knack-Toms v. Meyer Njus Tanick, PA*, 345 F. Supp. 3d 1033, 1038-39 (N.D. Ill. 2018), a case denying a Rule 12(b)(6) motion to dismiss a similar claim based on a similar letter issued by the same defendant, that the facts Plaintiff pleads and the corresponding reasonable inferences therefrom, construed most favorably to Plaintiff, plausibly state the claims. Accordingly, the motion to dismiss on this basis is denied.

### C. False or Misleading Representation of Meaningful Review

Lastly, Defendant argues that because Plaintiff does not challenge the substance of its letter, she fails to state an FDCPA claim. (R. 25, Def.'s Mem. at 13-15.) As Defendant sees things, because the courts in *Sheriff*, 136 S. Ct. 1594, and *Avila*, 84 F.3d 222, focused on the language of debt collection letters and not their form, those decisions compel the conclusion that without a challenge to the substance of the letter, Plaintiff's claim must fail. (*Id.*) According to Plaintiff on the other hand, *Sheriff* is inapposite and Defendant misreads *Avila*, which she urges to the contrary supports her claims. (*Id.* at 10-15.)

The Court again agrees with Plaintiff. As set forth in Section I above, at issue in *Sheriff* was not whether a representation of attorney involvement was false or misleading, but rather whether the defendant had misrepresented the attorney's relationship with the attorney general's office in its communication. 136 S. Ct. at 1599-1600. Because the Court found the letters were truthful, no liability could attach. *Id.* at 1600-03. Here, on the other hand, the case is at the

pleading stage, and it would be premature to draw a similar conclusion. Accordingly, *Sheriff* is not on point.

Further, Defendant's argument based on *Avila* not only misses the thrust of the Seventh Circuit's decision, but also fails to take into account its later decision in *Nielsen*, 307 F.3d at 635. Those decisions recognize precisely the type of claim that Plaintiff brings, reasoning that a debt collector violates the FDCPA by sending a debt collection letter from an attorney who has not personally reviewed and assessed its claims regardless of whether the letter contains an explicit assertion of attorney review. *Nielsen*, 307 F.3d at 635 (citing *Avila*, 84 F.3d at 229.) "As [the Seventh Circuit] recognized in *Avila*, a debt collection letter that is issued on an attorney's letterhead and over his signature conveys the notion that the attorney has directly controlled or supervised the process through which the letter was sent—i.e., that he has assessed the validity of the debt, is prepared to take legal action to collect on that debt, and has, accordingly, decided that a letter should be sent to the debtor conveying that message . . . . It is this implicit message that gets the debtor's knees knocking and makes the attorney letter a particularly effective method of debt collection." *Id.* (internal quotation and alterations omitted). These authorities do not compel dismissal of Plaintiff's claim, and Defendant's motion on this basis is accordingly denied. *See id.*; *Knack-Toms*, 345 F. Supp. 3d at 1038-39.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (R. 24) is DENIED. A status conference is set for 9:45 a.m., on August 20, 2019. The parties are DIRECTED to exhaust all settlement possibilities before the conference.

ENTERED:

**Judge Rubén Castillo**
**United States District Court**

**Dated: August 5, 2019**